UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MURRAY HABER et al., | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | CIVIL CASE NUMBER |
| | : | |
| BANKERS STANDARD INSURANCE CO. | : | 3:19-cv-276 (VLB) |
| *Defendants.* | : | |
| | : | December 31, 2019 |
| | : | |

**ORDER ON MOTION TO STRIKE [DKT. 23].**

I. **Introduction and Procedural History**

This action arises out of an insurance coverage dispute. Plaintiffs/Counter-Defendants Murray Haber, Susan, Haber, and the Murray Haber Revocable Trust (collectively, the "Habers") allege that Defendant/Counter-Plaintiff Bankers Standard Insurance Company ("Bankers") wrongfully withheld additional insurance benefits and proceeds of up to $2,000,000 due to the Habers under the insurance policy on their home for damages caused by an oil spill. [Dkt. 1-1]. It is undisputed that Bankers paid the Habers $300,000 in policy benefits. [Dkt. 9].

Bankers filed a counterclaim, seeking a declaratory judgment that its insurance policy has an express exclusion that applies to this loss except to the extent of "limited coverage" in the amount of $10,000, as provided by an endorsement to the policy. [Dkt. 9 at ¶¶20-26]. In response, the Habers denied Bankers's characterization of its policy and asserted five affirmative defenses: failure to state a claim, estoppel, waiver, unclean hands, and laches. [Dkt. 19].

Pending before the Court is Bankers's motion to strike the last four of the Habers' affirmative defenses as legally insufficient. [Dkt. 23]. The Habers oppose

the motion. [Dkt. 28]. The Court requested supplemental briefing on whether insurance coverage can be expanded by estoppel or waiver, [Dkt. 43], and the parties submitted memoranda in response. [Dkt. 45 (Defs.'s Supp'l Mem.), Dkt. 46 (Pl.'s Supp'l Mem.)]. After considering the briefing, the Court GRANTS in part and DENIES in part the motion for the reasons stated below.

II. Legal Standard for a Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An affirmative defense may be stricken if (a) it does not meet "the plausibility standard of *Twombly*"; (b) "it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims;" or (c) it prejudices the defendant and it is "presented beyond the normal time limits of the Rules." *GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F.3d 92, 98-99 (2d Cir. 2019). "When considering a motion to strike affirmative defenses, "the Court should construe 'the pleadings liberally to give the defendant a full opportunity to support its claims at trial, after full discovery has been made.' " *GEOMC Co. v. Calmare Therapeutics, Inc.*, No. 3:14-CV-01222 (VAB), 2016 WL 6122930, at *4 (D. Conn. Oct. 19, 2016), *aff'd*, 918 F.3d 92 (2d Cir. 2019) (internal citations and quotation marks omitted)."

III. Analysis

*A. Waiver*

The Habers assert waiver as their third affirmative defense, arguing that Bankers's payments, and its acts and conduct, are inconsistent with an intent to limit its responsibility for the Habers' losses to $10,000, and thus Bankers waived enforcement of that limitation. [Dkt. 19 at 4, Dkt 28 at 5.] In response, Bankers argues that waiver cannot expand coverage under a policy where coverage does not previously exist. [Dkt. 23 at 2].

"Waiver is the voluntary relinquishment of a known right." *MacKay v. Aetna Life Ins. Co.,* 173 A. 783, 787 (Conn.1934); *see Heyman Assocs. No. 1 v. Ins. Co. of State of Pa.,* 653 A.2d 122, 134 (Conn. 1995) (same). "An insurance contract, once entered into, cannot then be 'reformed [through waiver] to create a liability for a condition specifically excluded by the specific terms of the policy.'" *Great Lakes Reinsurance (UK), PLC v. JDCA, LLC*, No. CIV.A. 11-00001-WGY, 2014 WL 6633039, at *15 (D. Conn. Nov. 21, 2014) (quoting *Heyman*, 653 A.2d at 134)). "This limitation on the applicability of waiver to an insurance contract recognizes that because waiver requires the relinquishment of a known, and therefore *existing*, right within the insurance contract, a party cannot create through waiver coverage for a claim that the parties expressly had excluded from that contract." *Heyman*, 653 A.2d at 134 (emphasis added).

The Court agrees with Bankers. Here, if Bankers succeeds in proving that the insurance policy specifically excluded coverage for oil spills, with the exception of a $10,000 limited coverage endorsement, then Bankers has also shown that it had no rights regarding such coverage that it could waive. *See Heyman*, 653 A.2d at 134.

3

The Habers argue that this interpretation mischaracterizes their argument: they are not arguing that Bankers's waiver created additional coverage, but rather that Bankers waived the right to *enforce* a limit on already existing coverage. [Dkt. 28 at 5]. They cite no cases supporting this distinction, however, and the Court cannot see how it is relevant. In both cases—the case of an expansion to a new type of coverage and the expansion beyond a specified coverage limit—the underlying theory is the same: a "company should not be required by waiver… to pay a loss for which it charged no premium." *Tucker v. Am. Int'l Grp., Inc.,* No. 3:09-CV-1499 CSH, 2015 WL 403195, at *18 (D. Conn. Jan. 28, 2015) (also discussing estoppel, addressed next).

Therefore, the Court GRANTS Bankers's motion to strike as to the Habers' waiver defense.

### B. Estoppel

The Habers assert estoppel as their second affirmative defense. [Dkt. 19 at 4]. In support, they argue Bankers represented to the Habers that it would cover the Habers' losses, Bankers expected that the Habers would rely on those representations, and the Habers did rely on those representations to their detriment. *Ibid.* In response, Bankers argues that estoppel defenses cannot expand obligations in the insurance coverage context. [Dkt. 23 at 2-3].

The doctrine of equitable estoppel holds that "where one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is [precluded] from averring a different state of things as

4

existing at the time." *Edwards v. CBD & Sons*, 3:17-CV-00466 (SRU), 2018 WL 2303017, at *16 (D. Conn. May 21, 2018) (quoting *TD Bank, N.A. v. M.J. Holdings, LLC*, 71 A.3d 541, 551 (Conn. App. 2013)).

The Court is not persuaded that estoppel defenses fail in the insurance coverage context. The only cases cited by Bankers are Connecticut Superior Court and federal cases, and the cited cases all lump estoppel in with waiver and only cite other federal cases or an American Law Reports (ALR) article on the topic of estoppel. *See Hartford v. Travelers Prop. Cas. Co. of Am.*, No. HHDCV1760181277S, 2018 WL 3964869, at *9 (Conn. Super. Ct. Apr. 10, 2018) (citing federal case); *Metro. Prop. & Cas. Ins. Co. v. Sisbarro*, No. 3:13-cv-537 (MPS), 2015 WL 893328, at *6 (D. Conn. Mar. 2, 2015) (citing federal case); *Tucker v. Am. Int'l Grp., Inc.*, No. 3:09-CV-1499 (CSH), 2015 WL 403195, at *18 (D. Conn. Jan. 28, 2015) (citing 1 A.L.R.3d 1139). The ALR article itself cites a Connecticut Supreme Court and an Appellate Court of Connecticut case. 1 A.L.R.3d 1139 § 3 (citing *Breen v. Aetna Cas. & Sur. Co.*, 220 A.2d 254 (Conn. 1966) and *Cambridge Mut. Fire Ins. Co. v. Sakon,* 31 A.3d 849 (Conn. App. 2011)).

But the Connecticut Supreme Court distinguished estoppel from waiver in the insurance coverage context and analyzed estoppel as a defense to an action seeking a declaratory judgment of no insurance coverage. *Breen*, 220 A.2d at 259 ("Waiver, as distinguished from estoppel, is the intentional relinquishment of a known right," while estoppel "rests on the misleading conduct of one party to the prejudice of the other."); *see also Boyce v. Allstate Ins. Co.,* 383 (Conn. 1996) (considering estoppel independent from waiver). Similar to Bakers in this case,

the *Breen* insurer-plaintiff sought a judgment that there was no coverage under a certain condition, and the question was whether the insurer was estopped from so claiming. *Id.* at 256-59. The *Breen* court determined there was no estoppel only after considering the merits of the defense. *Id.* at 259. And *Breen* is not the only Connecticut Supreme Court case to recognize that estoppel may prevent coverage denial: even *Heyman*, which stands for the black-letter law that *waiver* cannot create coverage, recognized that waiver is "distinguishable" from the "equitable principals of estoppel." *Heyman,* 653 A.2d 122, 134 (Conn. 1995) (citing *Val Drugs, Inc. v. Lynn*, 402 F. Supp. 174, 177 (W.D.N.Y. 1975) ("It is well settled that the acts of an insurer which led the insured to believe he is covered under the policy estop the insurer from denying coverage under the policy.") (citing *Hartford Life Annuity Insurance Co. v. Unsell*, 144 U.S. 439 (1892))).

The ALR article also cites to *Sakon.* 1 A.L.R.3d 1139 § 3 (citing *Sakon*, 31 A.3d 849). But in light of the Connecticut Supreme Court's position, the Court finds the citation to *Sakon* unpersuasive, especially given that the *Sakon* court ultimately relies on *Heyman. Sakon*, 31 A.3d at 859. In addition, the *Sakon* court was analyzing a duty to defend claim, a different claim than a pure indemnity claim*. Ibid.*

Therefore, the Court finds that the Habers' estoppel defense is not a legally insufficient basis for precluding Bankers from prevailing on its declaratory judgment claim. The Court DENIES Bankers's motion to strike as to the Habers' estoppel defense.

### C. Laches

The Habers claim that Bankers's counterclaim is barred by the doctrine of laches, because Bankers made significant additional payments to the Habers, knowing that the Habers would rely upon that representation of coverage, and thus delaying the Habers from taking action to compel payment. [Dkt. 19 at 5-6].

> "The defense of laches, if proven, bars a [party] from seeking equitable relief.... First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the [opposing party]...."

*Caminis v. Troy*, 112 Conn.App. 546, 552 (2009) (citations and internal quotation marks omitted), *aff'd on other grounds*, 300 Conn. 297, 12 A.3d 984 (2011), *cited in Sisbarro*, 2015 WL 893328, at *5. They further argue that because courts have considered laches as a defense in other declaratory judgment actions, it is a proper defense in this action. [Dkt. 28 at 7].

The Court agrees with Bankers that this defense should be struck because laches is an equitable, not legal defense, and the declaratory judgment *in this case* sounds in law, not equity. Whether a declaratory judgment sounds in law or equity depends on the whether the underlying cause of action sounds in law or equity. *Caminis,* 112 Conn. App. at 558 ("[A]n action for declaratory judgment is subject to equitable defenses when the underlying cause of action on which it is based sounds in equity."). The underlying action in this case is a legal one. *See Sisbarro*, 2015 WL 893328, at *5 (finding that insurance policy coverage dispute is a legal action). Therefore, the declaratory judgment in this case also sounds in law, and laches is not a proper defense.

Thus, the Court GRANTS Bankers's motion to strike as to the Habers' laches defense.

### D. Unclean Hands

Finally, Bankers seeks to strike the Habers' affirmative defense of unclean hands. Bankers argues that Connecticut courts refuse to allow a bad faith claim to stand against an insurer if there is no coverage available under a policy for a claim. [Dkt. 23 at 3].

"A bad faith action must allege denial of the receipt of an express benefit under the [insurance] policy." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 67 A.3d 961, 986 (Conn. 2013), *quoted in Chorches v. Stewart Title Guar. Co.,* 48 F. Supp. 3d 151, 157 (D. Conn. 2014). "A bad faith cause of action not tied to duties under the insurance policy must therefore fail as a matter of law." *Id.* at 988. "[While] a discretionary investigation is often necessary to assess the duty to… indemnify under the policy, a bad faith action is properly addressed to the insurer's conduct depriving the insured of these contractual benefits, rather than the precedent, investigatory step." *Id.* at 987-88. A claim on the grounds of bad faith during the *coverage investigation* cannot stand.

Here, the Habers argue that Bankers has changed its interpretation of its insurance policy and took "deceptive, insincere, and inaccurate positions about factual matters related to the Habers' losses to justify terminating payments that Bankers owed." [Dkt. 19 at 5]. The Court interprets this affirmative defense as a claim of bad faith during Bankers' *coverage investigation*, as opposed to a claim of bad faith on the basis of contract breach. Because this bad faith affirmative

defense is not tied to Bankers's duties under the insurance policy, the Court finds that it is inadequate as a matter of law, and GRANTS Banker's motion to strike this affirmative defense.

IV. Conclusion

The Court GRANTS Bankers' motion to strike as to the Habers' affirmative defenses of waiver, laches, and unclean hands. The Court DENIES Bankers's motion to strike as to the Habers' affirmative defense of estoppel. Bankers did not move to strike the Habers' affirmative defense of failure to state a claim. Therefore, the Habers' affirmative defenses of failure to state a claim and estoppel survive. The others are struck.

IT IS SO ORDERED.

                                        /s/
                            Hon. Vanessa L. Bryant
                            United States District Judge

Dated at Hartford, Connecticut: December 31, 2019